UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MING Y. HUANG,<br><br>                            Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                           Defendant. | Case No.:  16-cv-02966-WQH-MDD<br><br>**REPORT AND RECOMMENDATION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 16, 17]** |

Plaintiff Ming Y. Huang ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title II of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits, or, in the alternative, to remand the case for further administrative proceedings.  (ECF No. 16).  Defendant moved for summary judgment affirming the denial of benefits.  (ECF No. 17).

For the reasons expressed herein, the Court recommends that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

# I.  BACKGROUND

Plaintiff alleges that she became disabled on January 28, 2014.  (A.R. 173).[1]  Plaintiff's date of birth, August 24, 1953, categorizes her as a person closely approaching retirement age on the alleged disability onset date.  20 C.F.R. §§ 404.1563, 416.963; (A.R. 27).

## A.  Procedural History

On January 30, 2014, Plaintiff filed an application for social security disability insurance benefits.  (A.R. 12).  Plaintiff's claim was initially denied on April 8, 2014, and denied upon reconsideration on July 10, 2014.  (*Id.*).  On February 22, 2016, Plaintiff appeared at a hearing in San Diego, California, before ALJ Mark B. Greenberg.  (A.R. 24).  Plaintiff and impartial vocational expert Dr. Mary E. Jesko testified.  (A.R. 12).

On March 24, 2016, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 12, 20).  Plaintiff appealed, and the Appeals Council declined to review the ALJ's decision.  (A.R. 1).  Consequently, the ALJ's decision became the final decision of the Commissioner.  (*Id.*).

On December 6, 2016, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision.  (ECF No. 1).  On May 1, 2017, Defendant answered and lodged the administrative record with the Court.  (ECF Nos. 13, 14).  On June 12, 2017, Plaintiff moved for summary judgment.  (ECF No. 16).  On July 14, 2017, the Commissioner cross-moved for summary judgment.  (ECF No. 17).  Plaintiff responded on August 3, 2017.  (ECF No. 19).

//

---

[1] "A.R." refers to the Administrative Record filed on May 1, 2017, and located at ECF No. 14.

## II. <u>DISCUSSION</u>

### A. <u>Legal Standard</u>

To qualify for disability insurance benefits, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "can be expected to result in death" or "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner makes this assessment through a process of up to five steps. First, the claimant must not be engaged in substantial, gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. *Id.* If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. At the fourth step, the claimant's relevant work history is considered with the claimant's residual functional capacity. If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(e). At the fifth step, if the claimant is found unable to perform the claimant's past relevant work, the issue is whether the claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work

experience, and residual functional capacity.  If the claimant cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 416.920(f).

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature,

the ALJ must "inform himself [or herself] about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## B.   The ALJ's Decision

The ALJ noted that on the alleged disability date Plaintiff was 60 years old which places her in the category of those claimants that are "closely approaching retirement age." *See* 20 C.F.R. § 404.1563. Based on Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (A.R. 19, 44). Consequently, the ALJ determined Plaintiff was not disabled, as defined in the Social Security Act, from January 28, 2014, through the date of the ALJ's decision, March 24, 2016. (A.R. 20).

Upon review of the record evidence, the ALJ found Plaintiff had the following severe impairments: cervical and lumber spine degenerative disc disease; degenerative joint disease; and De Quervains syndrome of the left wrist and hand. (A.R. 14). The ALJ determined that Plaintiff did not have an impairment or combination of impairments meeting or medically

equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (A.R. 15). Specifically, the ALJ found that "[n]o physician has opined that the claimant's conditions meet or equal any listing, and the State agency program physicians opined that they do not." (*Id.*). The ALJ also determined that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (A.R. 14).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform light work . . . except [Plaintiff] retains the capacity to occasionally climb ladders, ropes, or scaffolds and crawl; occasionally perform overhead reaching; frequently perform all other postural movements; and is precluded from concentrated exposure to extreme cold or vibration." (A.R. 16). After reviewing the record and Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. 16).

Relying on the record and testimony of vocational expert (VE) Dr. Mary E. Jesko, the ALJ found that Plaintiff is unable to perform any past relevant work. (A.R. 18). The ALJ stated that the record reflects that Plaintiff worked as a supervisor at a casino.[2] (A.R. 27). VE Jesko testified that this

---

[2] At the hearing the VE addressed the fact that Plaintiff's past work as a casino supervisor was comprised of two different jobs; gambling monitor and gambling cashier as defined by the Dictionary of Occupational Titles.

16-cv-02966-WQH-MDD

"composite" position required an "actual" exertional level that Plaintiff could not perform at her current functional capacity. (A.R. 44-45). VE Jesko noted that such a composite position would generally be performed at a light exertional level, but that Plaintiff actually performed at a medium exertional level. (A.R. 45). VE Jesko thus concluded that such a composite position, "as generally performed," requires an exertional level that Plaintiff could not perform at her current functional capacity. (*Id*.). VE Jesko also testified that either of the two jobs Plaintiff performed as a single composite position would require an exertional level that Plaintiff could perform at her current functional capacity. (*Id*.).

At step 5 of the sequential evaluation process, the ALJ noted that jobs exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 19). In determining this, the ALJ considered Plaintiff's age, education, work experience, and RFC. (A.R. 19). Based on this information, VE Jesko testified that Plaintiff can perform occupations such as gambling cashier and gambling monitor. (A.R. 19). Accordingly, the ALJ found Plaintiff was not disabled from January 28, 2014, to the date of the ALJ's decision, March 24, 2016. (A.R. 20).

In determining that Plaintiff is not disabled, the ALJ noted the following to be of particular relevance:

### 1. Plaintiff's Testimony

Plaintiff alleged she is unable to perform or sustain all work activity due to neck and low back pain; pain in her left wrist and hand; and leg and arm pain that limit her abilities to sit, stand, walk, lift, carry, and perform postural movements and other activities. (A.R. 16).

At the hearing, Plaintiff testified that she was still in pain two years after her surgery and did not plan to undergo the two additional surgeries

her surgeon told her she would require. (A.R. 27). Plaintiff testified that she could not work because her pain medication left her unable to concentrate. (A.R. 28, 33-34). Plaintiff also testified that she could stand on her feet for only twenty minutes at a time and lift only five pounds. (A.R. 36). Plaintiff further testified that she could perform only limited household chores; drive only "once in a while;" required her daughter's help to pick up groceries; and could not balance without using a cane. (A.R. 35, 39).

The ALJ found that Plaintiff's allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record. (A.R. 17).

### 2. Plaintiff's 2013-2015 Medical Record

On October 14, 2013, Plaintiff complained of lower back spasms to Vista Community Clinic. (A.R. 249-250). Physician's notes indicated little to no evidence of significant and persistent related neurologic deficit. (A.R. 253).

In January 2014, Plaintiff underwent cervical spine surgery. (A.R. 233). Despite her neck pain and related symptoms, she was able to work until her surgery. (A.R. 246). Plaintiff participated in postoperative physical therapy and experienced improved functioning. (A.R. 16). Orthopedic exams in August and December 2014 showed that Plaintiff walked with a normal gait; was able to toe and heel walk and presented with no assistive ambulatory device; her neck had adequate range of motion and no tenderness or spasm; her back had negative straight leg raise and no tenderness or spasm; she was neurologically intact with intact coordination and sensation; and had full motor strength in her upper and lower extremities. (A.R. 290-292). Imaging studies confirmed good fusion of the cervical spine, and treating orthopedic Dr. N. Alleyne, M.D., encouraged Plaintiff to start regular exercise and did not need to see her in follow-up for six months, suggesting

relative stability.  (A.R. 291, 293).

On December 11, 2015, Plaintiff complained of wrist pain to Vista Community Clinic.  (A.R. 299).  Primary care notes document left hand and wrist pain with occasional mild swelling, tenderness and positive Finkelstein's test.[3]  (*Id.*).  A left wrist radiograph confirmed mild degenerative changes of the radiocarpal and metacarpal joints.  (A.R. 360).  Plaintiff was then diagnosed with De Quervain's tenosynovitis,[4] left, which was treated with a Lidocaine injection requiring a one month follow up.  (A.R. 302).  Plaintiff's restriction to light exertion lifting and carrying fully accommodated her mild tenosynovitis.  (A.R. 17)

On September 15, 2015, Plaintiff saw Dr. T. Sabourin, M.D., for an orthopedic consultation.  (A.R. 269).  The physical exam showed some tenderness and reduced range of motion of Plaintiff's lumbar and cervical spine, while the exam of her shoulders, elbows, hips, knees, ankles and feet was unremarkable.  (A.R. 17).  Plaintiff had full range of motion in her fingers and hands yet had some pain in her fingers.  (A.R. 272).  Her Tinels and Phalen tests were negative.  (*Id.*)  The range of motion in Plaintiff's wrists were grossly normal and painless with no swelling or crepitus with

---

[3] See *generally Diseases and Conditions, De Quervain's tenosynovitis: Finkelstein Test*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/multimedia/finkelstein-test/img-20005987 (last visited Nov. 3, 2017) (a Finkelstein's test is used by physicians to confirm de Quervain's tenosynovitis.  To do so, the patient makes a fist with their thumb in-between their fingers and palm, and then bends their wrist towards their little finger. If this causes pain, it is likely the patient has de Quervain's tenosynovitis.

[4] See *generally Diseases and Conditions, De Quervain's tenosynovitis: Definition*, MAYO CLINIC (June 13, 2015) https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/con-20027238) (De Quervain's tenosynovitis "is a painful condition affecting the tendons on the thumb side of [the] wrist. . . . [A]ny activity that relies on repetitive hand or wrist movement . . . can make it worse.")

mildly positive Finkelstein test. (*Id.*) Plaintiff had normal sensation and deep tendon reflexes, walked with a normal gait and had a negative straight leg raise. (A.R. 270-272). Dr. Sabourin diagnosed Plaintiff with cervical spine degenerative disc disease, status post 3 level cervical spine fusion; lumbar spine degenerative disc disease; and mild acute de Quervian tenosynovitis of the left thumb. (A.R. 273).

### 3. Additional Factors

The ALJ found Plaintiff's allegations were not fully credible. (A.R. 17). Specifically, he stated that although her symptoms were genuine, the surgery was generally successful in improving her symptoms and functioning. (*Id.*).

The ALJ also stated that given the complaints of her disabling symptoms, her daily activities were not limited to the extent one would think. (*Id.*). Plaintiff maintained her daily activities and tolerated her medication without any serious side effects, while living alone and taking care of her toddler grandson. (A.R. 260, 266, 270, 318).

Additionally, the ALJ opined that some evidence suggests Plaintiff stopped working when she lost her job due to the company being sold and not for her disabling impairments. (A.R. 18).

### 4. State Agency Medical Consultants

The ALJ gave substantial weight to the opinions of the State Agency medical consultants and cites to Social Security Ruling 96-6p[5] determining that their finding of fact must be treated as expert opinion evidence by a non-examiner. (A.R. 18). The consultants opined that Plaintiff had the capacity

---

[5] Social Security Rulings (SSR) "'are binding on all components of the Social Security Administration' and 'represent final opinions and orders and statements of policy and interpretations' of the SSA." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1224 (9th Cir 2009).

16-cv-02966-WQH-MDD

to perform light exertion work which entails frequently climbing ramps or stairs, balancing, stooping, kneeling and crouching. (A.R. 62-63, 73-74). They also found that plaintiff may occasionally climb ladders, ropes or scaffolds, crawl, and reach overhead bilaterally, while avoiding concentrated exposure to extreme cold or vibration. (*Id.*).

The ALJ noted that these consultants had the opportunity to review the medical records and are familiar with the Social Security rules and regulations. (A.R. 18). He additionally noted that these opinions are consistent with and corroborated the supporting evidence that Plaintiff retained adequate strength, mobility and effective treatment. (*Id.*).

### 5. Dr. Sabourin, Consultative Examiner

The ALJ gave some weight to consultative examiner Dr. Sabourin's, M.D., opinion. (A.R. 18). Dr. Sabourin opined that Plaintiff retained the capacity to perform light exertion work, sitting, standing and walking for 6 hours each in an 8 hour day, but is limited to sitting up to 3 hours at a time, and standing or walking for no more than 1 hour at a time. (A.R. 18, 273, 278).

The ALJ agreed that Plaintiff retained the capacity to perform up to a range of light exertion, demonstrated by Dr. Sabourin's findings and the objective record that Plaintiff retained good strength and mobility and had few significant and persistent neurological deficits. (A.R. 18, 253, 273, 336, 356). Thus giving little weight to the unsupported opinion that Plaintiff is limited to no more than 3 hours of sitting and 1 hour of standing or walking at one time. (A.R. 18).

### 6. Dr. Stenzel, Treating Physician

The ALJ gave little weight to treating physician Dr. Stenzel's, M.D., opinion. (A.R. 18). Dr. Stenzel opined that Plaintiff's impairments require

16-cv-02966-WQH-MDD

her to shift between positions and take unscheduled work breaks, causing her to be off task more than 25% of a workday, and would have more than 4 work absences per month. (A.R. 286-289). The ALJ noted that Dr. Stenzel's opinion is not supported by the evidence showing Plaintiff's improved cervical spine surgery, conservative treatment of her lower back, mild degenerative findings of her left wrist, little to no significant and persistent neurological deficits and good retained strength and mobility. (A.R. 18). Accordingly, the ALJ determined Plaintiff retains the capacity to perform and sustain a range of light exertion work as supported by the evidence. (*Id.*).

## C. Issues on Appeal

### 1. Weight Afforded Plaintiff's Treating Physician, Dr. L. Stenzel's, M.D.

Plaintiff argues that the ALJ erred in granting little weight to the opinion of treating physician Dr. Stenzel. (ECF No. 16-1 at 7-9). Specifically, Plaintiff asserts that the "ALJ failed to articulate sufficient reasons" by either clear and convincing or specific and legitimate means supported by substantial evidence to discount Dr. Stenzel's treating opinion. (*Id.*). Plaintiff further contends that the ALJ's citation to the medical findings, as contrary to Dr. Stenzel's opinion, are "nothing more than his lay opinion." (*Id.* at 8).

Defendant asserts that the appropriate standard in granting little weight to a treating physician is citation to "good reasons that are supported by substantial evidence." (ECF No. 17-1 at 4).[6] Defendant argues that the ALJ properly afforded little weight to Dr. Stenzel's opinion which was

_____

[6] Defendant acknowledges the Ninth Circuit's "clear and convincing reasons" standard, and asserts the "ALJ's reasons suffice under any standard." (ECF No. 17-1 at 4).

16-cv-02966-WQH-MDD

supported by "valid reasons based upon substantial evidence" in the objective record. (*Id.* at 3). Defendant states that Plaintiff was afforded conservative treatment, which is a valid reason to discount the opinion of a physician. (*Id.* at 4). Defendant contends that Dr. Stenzel's opinion was contrary to and inconsistent with the objective medical record showing that Plaintiff "retained the capacity to perform and sustain up to a range of light exertion work." (*Id.* at 5).

In opposition, Plaintiff contends that the ALJ did not provide a specific and legitimate rationale to discount the treating opinion of Dr. Stenzel. (ECF No. 19 at 3). Plaintiff argues that conservative treatment is not generally used to discount the opinion of a treating physician and that the "ALJ may not 'cherry pick'" isolated events from the record to support his conclusions. (*Id.* at 4). Plaintiff continues to assert that the treatment was not conservative because it ran the "whole gambit," from medication to surgery. (*Id.* at 3). Plaintiff contends that neither the ALJ, nor the Commissioner point to a medical opinion that undermines Dr. Stenzel's treating opinion. (*Id.* at 5).

"The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than to that of a nontreating physician. *Id.* (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. *Pitzer v. Sullivan*, 980 F.2d 502, 506 (9th Cir. 1990).

However, the opinions of treating physicians are not conclusive. *Lester,* 81 F.3d at 831. The ALJ may reject a treating physician's opinion for "clear and convincing" reasons, even if that opinion is uncontradicted by other evidence. *Id.* If the opinion is contradicted by other evidence, the opinion of an examining physician can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 832. Where there is contradiction between medical opinions, with a treating or examining physician, "the ALJ is charged with determining credibility and resolving the conflict." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2008).

"[T]he same rule applies to the opinions of an examining physician in the absence of legitimate conflicting testimony and any reason for the ALJ's rejection of the examining physician's opinion." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies rejecting an opinion of an examining or treating physician. *Lester*, 81 F.3d at 831. The opinion of a nonexamining or nontreating physician may serve as substantial evidence if the opinion is consistent with independent clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)."

Here, the ALJ gave substantial weight to the State Agency medical consultants and some weight to consultative examiner Dr. Sabourin where, among other things, they both opined that Plaintiff "retains the capacity to perform up to a range of light exertion work." (A.R. at 18). The State Agency and Dr. Sabourin's opinions are more consistent with the objective record presented and directly contradict that of Dr. Stenzel's. As a result, the ALJ could reject Dr. Stenzel's treating opinion if his findings were supported by substantial evidence based on specific and legitimate reasons. *Lester,* 81 F.3d at 832.

The ALJ presented specific, legitimate reasons based on substantial evidence for discounting treating physician Dr. Stenzel's opinion. In his analysis the ALJ cited to Dr. Stenzel's responses on a *Physical Medical Source Statement* dated January 5, 2016. (A.R. at 18). The ALJ afforded little weight to her opinion that "claimant's impairments cause her to have to shift between positions, take unscheduled work breaks, would be off task 25% or more of the workday, and would have more than 4 work absences per month." (A.R. at 18, 286-289). The ALJ found that the evidence of record "does not support [Dr. Stenzel's] opinions." (A.R. at 18). He reasoned that the objective evidence is more consistent with the finding that Plaintiff "retained [the] capacity to perform and sustain up to a range of light exertion work." (*Id.*).

To support this finding, the ALJ gave four specific and legitimate reasons based on the record for giving Dr. Stenzel's opinion little weight. He reasoned that the evidence of record showed that Plaintiff had "improvement with cervical spine surgery, conservative treatment of [her] low back impairment, only mild degenerative findings of her left wrist, and [] little to no significant and persistent neurological deficits with good retained strength and mobility." (*Id.*). The ALJ further supported these findings by citing to numerous health records from Plaintiffs treatment and recovery. First, Plaintiff experienced improved functioning in her spine through postoperative physical therapy. (A.R. at 16). Within months of surgery, "imaging studies confirmed good fusion of the cervical spine." (A.R. 17, 291, 293). Second, Plaintiff was afforded conservative treatment for her lower back impairments. Plaintiff "received some primary care services" where progress notes reported "some low back tenderness and muscle spasm but have little to no evidence of significant and persistent related neurologic

16-cv-02966-WQH-MDD

deficit.  (A.R. 17, 248-258, 336, 356).  Third, Plaintiff's findings of the left wrist were only mild.  Primary care progress notes showed Plaintiff's left hand and wrist had some pain and "occasional mild swelling, tenderness and positive Finklestein's test," yet a "radiograph confirmed only mild degenerative changes."  (A.R. 17, 301, 311, 316, 336, 360).  Plaintiff was further diagnosed with De Quervain's tenosynovitis but a "restriction to light exertion lifting and carrying" would "fully accommodate the mild tenosynovitis."  (A.R. 17, 302).  Fourth, the ALJ noted that based on the record, Plaintiff's primary care progress notes stated that Plaintiff's impairments had "little to no evidence of significant and persistent related neurologic deficit[s]."  (A.R. 17, 250, 253, 336, 356).  Plaintiff further maintained full postoperative "motor strength in her upper and lower extremities."  (A.R. 17, 291).  Therefore, Dr. Stenzel's opinion is inconsistent with the objective medical record.

Established by the above record, the ALJ, through specific and legitimate reasons based on substantial evidence, properly discounted Dr. Stenzel's treating opinion.

## 2. Plaintiff's Mild Mental Limitations

Plaintiff contends that the ALJ erred by not including her mild mental limitations in social functioning, daily living, and concentration persistence or pace in Plaintiff's residual functional capacity.  According to Plaintiff, 20 CFR § 404.1545(e) states "we will consider the limiting effects of all your impairments(s), even those that are not severe, in determining your residual functional capacity."  *Id.*  Plaintiff asserts that the ALJ's failure to comply with § 404.1545(e) is legal error. (ECF 16-1 at 10).

Defendant contends that the ALJ properly found that Plaintiff's mental impairments were not severe and "did not produce more than a mild

16-cv-02966-WQH-MDD

limitation on her ability to perform work activity. . . ." (ECF No. 17-1 at 5).

Plaintiff has alleged disability based, in part, upon mental impairments. (ECF 16-1 at 10). A special procedure must be followed at each level of administrative review when evaluating the severity of mental impairments. See 20 C.F.R. §§ 404.1520a(a). "In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria). 20 C.F.R. § 404.1520a." *Lester v. Chater*, 81 F.3d at 828. In some cases, a listing for a specific mental impairment may have a third set of criteria – paragraph C- which are alternative impairment related functional limitations. *See* 20 C.F.R. 1520(a); 20 C.F.R. Pt. 404, Supt. P. App. 1 § 12.00 et seq. (2013).[7]

Here, the ALJ found that Plaintiff's claim of depression does not satisfy 20 C.F.R. Pt. 404, Supt. P App 1 §12.00. The ALJ determined that Plaintiff did not exhibit any combination of at least two of the paragraph B criteria, to wit: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence or pace; or 4) repeated episodes of decompensation, each of extended duration. (A.R. at 15). Nor did the ALJ find paragraph C criteria applicable to Plaintiff's alleged mental disability, i.e., there is no

---

[7]     The criteria in paragraph A substantiate medically the presence of a particular mental disorder. . . . Impairments should be analyzed or reviewed under the mental category(ies) indicated by the medical findings. . . .

The criteria in paragraph B and C describe impairment-related functional limitations that are compatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A. 20 C.F.R. Pt. 404, Supt. P App 1 §12.00A.

evidence that there is more than a minimal limitation in her ability to do basic work activities. See 20 C.F.R. § 404.1520a(d)(1). (*Id.*). The ALJ determined that for the first three criteria in paragraph B, Plaintiff's mental limitations were mild, further, no episodes of decompensation of extended duration were found to apply regarding the fourth paragraph B criteria. (*Id.*)

The ALJ cited to Plaintiff's primary care treatment records from 2014. On April 1, 2014, Plaintiff's psychiatric exam was normal with the exception of "increased depression post op –likely let down from anticipated dramatic improvement combined with other life stressors….[N]ot uncommon. . . . Declines counseling for now." (A.R. 261). On April 28, 2014, Plaintiff had a follow up visit for depression. Improvement of initial symptoms was noted and "the patient has the self-managing skills to manage depression care." (A.R. 263). On June 3, 2014, at a follow-up exam Plaintiff denied depressed mood, difficulty concentrating, diminished interest or pleasure, feelings of guilt, loss of appetite, restlessness or thoughts of death or suicide." (A.R. at 266). Her affect was also noted as "much brighter" and "[m]uch improved." (A.R. 267).

The ALJ also gave substantial weight to the opinions of the state agency psychological consultants, Dr. H. Amado, M.D. and Dr. Jay Flocks, M.D. Dr. Amado opined that the evidence demonstrated Plaintiff had "a non-severe psychological medically determinable impairment." (A.R. 61). Dr. Flocks concluded that Plaintiff had "non-severe depression." (A.R. at 70). According to the ALJ, "[s]ubstantial weight is given to these opinions since the consultants had the opportunity to review the medical evidence of record, are familiar with Social Security rules and regulations, their opinions corroborate each other, and the evidence of record showing no significant thought disturbance or cognitive deficit support their opinions." (A.R. at 15).

16-cv-02966-WQH-MDD

In addition, the ALJ stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR-96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR at15).

As noted herein, the ALJ specifically considered the record evidence and expressly incorporated Plaintiff's mild mental limitations into the RFC following step 3 of the sequential evaluation. (A.R. 15). Additionally, the language in SSR 96-8P (1996) supports the ALJ's procedure in this case. Specifically, SSR 96-8P states "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'." The ALJ evaluated the record evidence relating to Plaintiff's claimed mental limitations and restrictions in accordance with the requirements set out in SSR 96-8P. Once completed, the ALJ's RFC properly reflected his findings.

Plaintiff raises a related argument regarding her non-severe mental impairment. Specifically, Plaintiff claims the ALJ failed to include her mild mental limitations in the hypothetical presented to the vocational expert.

Defendant contends that "[c]ontrary to Plaintiff's assertions, mild mental limitations are not required to be included [in] an RFC assessment nor in a hypothetical submitted by the ALJ to the VE." (ECF No. 17 at 6). Defendant cites an unpublished Ninth Circuit case, *Landa v. Astrue*, 283 Fed.

Appx. 556, 558 (9th Cir. 2008) to support her proposition. However, the focus in *Landa* is whether the ALJ erred by relying solely on the Medical-Vocational Guidelines ("Grids") rather than consulting with a vocational expert. Here, the ALJ did consult with a vocational expert, thus, Defendant's argument and citation to *Landa* is unpersuasive.

A review of the hearing transcript shows the following interaction between the ALJ and the VE:

> ALJ: So we have an individual closely approaching retirement age with a college education, past relevant work experience as just described. If our individual is limited to light work with frequent postural activities; occasional overhead reaching; and no concentrated exposure to extreme cold or vibration is past work available?
> VE: As generally performed, not as actually performed.
> [AR at 44].

Admittedly, the record transcript also shows that the ALJ did not separately include Plaintiff's mild mental limitations in his hypothetical. However, in hypotheticals posed to a vocational expert, the ALJ must only include those limitation supported by substantial evidence. *See Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir. 2001). As discussed herein, the Court has determined that the ALJ's RFC was based upon substantial evidence which included Plaintiff's mild mental limitations. Consequently, the Court finds the ALJ did not commit reversible error.

Even if the ALJ had erred by failing to include Plaintiff's mild mental limitations in the hypothetical posed to the VE, the error would have been harmless. *See Salinas v. Astrue*, 2008 WL 3540248, *2 (C.D. Cal., Aug.28, 2008) (stating that "the question of whether the ALJ included all of a claimant's limitations in a hypothetical is subject to harmless error analysis") (citing *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)). Harmless

16-cv-02966-WQH-MDD

error only occurs if the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

The challenged limitations are mild and not disabling. A mild mental limitation means no significant interference with the ability to perform basic work activities. *Osenbrock v. Apfel*, 240 F.3d at 1165. Plaintiff has not shown how her mild mental limitations would affect her ability to perform the work as a gambling monitor or gambling cashier. The hearing transcript shows that Plaintiff stopped working as a casino supervisor (A.R. 27) because of physical problems and attributed her limitations to physical problems and only peripherally to concentration and depression that has arisen since she stopped working. (AR at 33-38). Even counsel for Plaintiff spent most of his time questioning Plaintiff and the VE about Plaintiff's claimed physical disabilities. (A.R. at 46, 50-51). Accordingly, the Court finds that if the ALJ did err by failing to include the challenged mild mental limitations, the error was harmless.

Because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical [] was proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005). It is well settled that "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42. As the factfinder the ALJ's decision must be affirmed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Commissioner Social Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009). "If evidence is susceptible of more

than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748,749 (9th Cir. 1995). The ALJ's findings of fact and conclusions of law reflect his consideration of the total medical evidence of record.

The Court's review revealed no ambiguity or error indicating that the record was not sufficiently developed. Accordingly, the Court finds the ALJ's findings of fact and conclusions of law, including Plaintiff's residual functional capacity, is supported by substantial evidence and free of legal error.

### III. CONCLUSION

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendant's Motion be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than January **January 8, 2018**. The document should be captioned "Objections to Report and Recommendations."

//
//
//
//
//
//
//
//

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 16, 2018**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   December 22, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

16-cv-02966-WQH-MDD